NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT JONES, | : | |
| | : | Civ. No. 03-0017 (GEB) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| CITY OF NEWARK | : | |
| POLICE DEPARTMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motions of defendants City of Newark, Anthony Ambrose, Joseph O'Connor, Robert Berger, and Kevin Johnson (referred to collectively as "Newark defendants") for summary judgment and defendants Township of Irvington and Township of Irving Police Department (referred to collectively as "Irvington defendants" and collectively with the Newark defendants as "moving defendants") for summary judgment on plaintiff Robert Jones's ("Plaintiff") Third Amended Complaint alleging tort claims under state law and deprivation of constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1986. The Court has decided the motions based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the moving defendants' motions for summary judgment are granted.

**I. BACKGROUND**

This matter arises out of the April 28, 2000 arrest of Plaintiff by police officers from the

City of Newark following Plaintiff's phone call to the police regarding a domestic dispute. After police officers arrived at the apartment, Plaintiff voluntarily went with the officers to the police station to press charges. Plaintiff did not have a valid driver's license and gave the officers an expired boat license and social security card. After the officers conducted a record check, Plaintiff was informed that he had four different outstanding warrants from four towns. The warrants were issued for an "Akim Brock" with Plaintiff's name and date of birth listed as an alias. Although other characteristics were not an exact match, the Newark officers concluded that Plaintiff was Brock and notified the Irvington Police Department of the outstanding Irvington warrant. On April 29, 2000, two Irvington police officers transported Plaintiff from Newark to the Irvington Police Department based on the facially valid warrant issued by Irvington. On May 1, 2000, Plaintiff was brought before a judge at the Irvington Municipal Court where it was determined that Plaintiff had been misidentified as Brock.

On or about March 8, 2001, Plaintiff filed a complaint in the state court alleging violation of his civil rights against defendants in connection with his arrest on four warrants issued to "Akim Brock." On or about July 25, 2002, Plaintiff filed his Third Amended Complaint alleging nineteen counts against the Newark defendants, the Irvington defendants, and others.[1] On or about January 2, 2003, the matter was removed to this Court.

---

[1] The Court notes that nearly half of the counts in Plaintiff's Third Amended Complaint appear to be duplicative. Specifically, Plaintiff's Twelfth Count appears to recite the Second Count verbatim, the Thirteenth Count recites the Third Count verbatim, and so on through the Ninth and Nineteenth Counts. Consequently, as logic requires, disposition of each pair of corresponding counts will be identical.

## II. DISCUSSION

    A. <u>Standard for a Motion for Summary Judgment</u>

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1366 (3d Cir. 1996); <u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), <u>cert. denied</u>, 490 U.S. 1098 (1989); <u>Hersh v. Allen Prods. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).

    Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof

3

on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a

genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1.  "Where possible, a single joint Rule 56.1 statement is favored."  Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted).  "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

    B. <u>Defendants have Qualified Immunity from the Constitutional Claims and the State Law Claims are not Cognizable</u>

Although the requisite Rule 56.1 statements were not filed by all parties, Plaintiff's brief explicitly concurs with the statements of facts in each of the moving defendants' briefs, with the exception of some immaterial facts.  However, Plaintiff also asserts that the Newark defendants failed to address Plaintiff's alleged arrest on July 30, 2000 (Count Ten), by the Newark police department on the same erroneous grounds as the earlier arrest and subsequent transfer to the Irvington Police Department where he was immediately recognized and released. (Pl's Br. at 5.) The Newark defendants' Reply alleges that Plaintiff provides no factual support for such a claimed arrest and that there are no records of his arrest at that time, but asserts, in the

alternative, that probable cause existed if this second arrest occurred.  (Newark Defs.' Reply at 5-7.)  The Court finds that there are no genuine issues of material fact with respect to the claims arising from the April 28, 2000 arrest (Counts One - Nine, Eleven - Nineteen) and will decide those claims as a matter of law.  With Plaintiff unable to provide any evidence of the alleged second arrest, no issue for trial exists and the Court will also decide that claim as a matter of law.

The moving defendants assert that qualified immunity of the officers provides a basis for summary judgment on Plaintiff's Third Amended Complaint.  Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Therefore, "qualified immunity questions should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987)(citations omitted).  Furthermore, unless the historical facts material to the issue of whether the actions of the officers were objectively reasonable are in dispute, the reasonableness of the officers' beliefs or actions is not a jury question, but one for the court.  Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997)(citing Hunter v. Bryant, 502 U.S. 224 (1991)(per curiam)).

Addressing a warrantless search, the Supreme Court recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable."  Anderson, 483 U.S. at 641 (1987)(citation omitted).  Consequently, the relevant inquiry "is the objective (albeit fact-specific) question whether a reasonable officer could have believed" the arrest was lawful "in light of clearly established law and the information the . . . officers possessed."  Id.  "Defendants

will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Supreme Court recently reaffirmed the proposition that "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution.  Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." Saucier v. Katz, 533 U.S. 194, 206 (2001).

Based on the record presented, the Court finds the respective actions of the Newark and Irvington police officers to have been reasonable under the circumstances.  The Newark officers relied on the information provided by Plaintiff and compared it to the facially valid warrant issued by the Irvington police.  On the basis of that information, both the Newark and Irvington police officers reasonably believed, albeit mistakenly, that Plaintiff was Brock.  The conduct of the officers was in keeping with the standard enunciated by the Supreme Court and they therefore preserved their qualified immunity.  Therefore, the claims against the officers must fail.

The moving defendants further asserted that Plaintiff's Section 1983 claims must fail because probable cause existed for Plaintiff's arrest.  The Supreme Court has consistently stated that mistakes on the part of police officers do not constitute constitutional violations.  In finding that police had probable cause to arrest defendant without a warrant, the Supreme Court stated

7

that "[t]he upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ." Hill v. California, 401 U.S. 797, 803-04 (1971). See also Brinegar v. United States, 338 U.S. 160, 176 (1949)(stating that room must be allowed for mistakes of police officers given that the mistakes are "those of reasonable men, acting on facts leading sensibly to their conclusions of probability.").

The Court finds that the facts of the instant matter fall within the context of the cited authority in that the Newark police officers relied on the reasonable probability that Plaintiff was "Akim Brock" based on the warrant listing Plaintiff's name as an alias and the identical dates of birth. The identification presented by Plaintiff was insufficient in convincing the officers otherwise and there has been no showing that the officers did not follow proper procedure in detaining Plaintiff for pick up and transport for further detainment by the Irvington police before he was brought before a municipal judge for proper identification. Therefore, probable cause existed for the arrest and subsequent detainment and Plaintiff's constitutional rights were not violated.

Outside of the allegations in Plaintiff's Third Amended Complaint, Plaintiff has made no showing of a failure to properly train its officers, nor a constitutional violation that occurred as result. "[A] municipality cannot be liable solely as an employer because there is no *respondeat superior* theory of municipal liability in § 1983 actions." Brown v. Commonwealth of Pennsylvania, Dep't of Health, 318 F.3d 473, 482 (2003)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Although a municipality can still be liable even if no individual

officers violated the Constitution, "for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights." Id. (citing Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992)). "It is not enough that a municipality adopted with deliberate indifference a policy of inadequately training its officers. There must be a 'direct causal link' between the policy and a constitutional violation." Id. (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). The Court finds no constitutional violations to have occurred and therefore the claims against the municipalities must be denied, and the moving defendants' motions for summary judgment are granted with respect to the federal claims.[2]

Addressing the state law claims, Plaintiff's brief noted the then pending decision by the New Jersey Supreme Court in DelaCruz v. Bor. of Hillsdale, which has since been decided. 183 N.J. 149 (2005). In the opinion, the New Jersey Supreme Court's inquiry focused upon the verbal threshold requirement of the Tort Claims Act, which provides, in pertinent part, that

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. Stat. Ann. § 59:9-2(d). The Court specifically addressed another section of the Act, which provides:

> A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

---

[2] Given the determination that defendants are immune from actions under Section 1983, the Court finds no basis for holding defendants liable for actions under Sections 1985 and 1986. See Jorden v. Nat'l Guard Bureau, 799 F.2d 99, 108 n.12 (3d Cir. 1986)(citations omitted), cert. denied sub nom. Sajer v. Jorden, 484 U.S. 815 (1987).

N.J. Stat. Ann. § 59:3-3.  The Court concluded that the language of that provision merely "denies a public employee a good faith defense in false arrest/false imprisonment claims" rather than "suggest[ing] that because a good faith defense is unavailable for such claims that a plaintiff is relieved of complying with other provisions of the Tort Claims Act, such as the verbal threshold contained in N.J.S.A. 59:9-2(d)."  DelaCruz, 183 N.J. at 164 (footnote omitted).

After reviewing comments to the provision and relevant authority, the Court reversed the decision below and held that "[t]he clear terms of the Tort Claims Act require that all claims–including those for false arrest and false imprisonment–must vault the verbal threshold in order to be cognizable."  Id. at 164-65.  Given the guidance of the DelaCruz opinion, this Court concludes that Plaintiff's claims under state law are not cognizable because he did not allege damages sufficient to vault the verbal threshold.  Therefore, the moving defendants' motions for summary judgment are granted with respect to the state law claims.

Although the Irvington defendants sought summary judgment on only the first nine counts of Plaintiff's Third Amended Complaint, as noted above, Counts Twelve through Nineteen are duplicative of Counts Two through Nine and will be disposed of similarly.  Furthermore, Plaintiff had notice of the Newark defendants' motion for summary judgment on all counts and filed the identical opposition to each of the moving defendants' motions.  Therefore, the Court may *sua sponte* grant summary judgment to the Irvington defendants on the remaining counts as granted on the identical claims dismissed against the Newark defendants.  See Asbury Park Bd. of Educ. v. Hope Acad. Charter Sch., 278 F. Supp. 2d 417, 420 n.2 (D.N.J. 2003)(citations omitted).

**III. CONCLUSION**

       For the foregoing reasons, the moving defendants' motions for summary judgment are granted.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: May 5, 2006


                                                s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.